UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANIEL REETZ, on behalf of
PATRICK GORDON REETZ,

          Plaintiff,

    v.

KILOLO KIJAKAZI, Commissioner of
Social Security Administration,

          Defendant.

Case No. 21-cv-0177-bhl

### ORDER AND DECISION

    Daniel Reetz, on behalf of his late son, Patrick Gordon Reetz, seeks reversal and remand of the Acting Commissioner of Social Security's decision denying Patrick Reetz's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act. For the reasons set forth below, the Acting Commissioner's decision will be affirmed.

### PROCEDURAL BACKGROUND

    Reetz applied for SSI and DIB on September 9, 2013 and October 28, 2013, respectively, alleging a disability onset date of June 21, 2012. (ECF No. 23 at 2.) Reetz's applications were denied initially and on reconsideration and he requested a hearing before an ALJ. (ECF No. 30 at 2.) A hearing was held on September 26, 2016, and the ALJ issued an unfavorable decision on June 5, 2017. (ECF No. 16-6 at 54-76.) Reetz requested review from the Appeals Council, which remanded the case for a new hearing. (*Id.* at 84-86.) On February 14, 2019, an ALJ conducted a second hearing and issued a partially favorable decision, finding Reetz disabled as of February 21, 2017. (*Id.* at 90-115.) Reetz requested Appeals Council review, and the Appeals Council again remanded the case on July 1, 2019. (ECF 16-7 at 2.) On November 2019, an ALJ conducted another hearing and heard testimony from both Reetz and a vocational expert. (ECF 16-3 at 14.)

The ALJ then issued an unfavorable decision on December 20, 2019. (*Id.* at 42-43.) On September 16, 2022, the Appeals Council denied review and this appeal followed. (*Id.* at 2.)

## FACTUAL BACKGROUND

Plaintiff Patrick Gordon Reetz was thirty-five years old on his alleged onset date. (ECF No. 16-3 at 68.) He suffered from chronic pain throughout his neck and back, including his cervical, thoracic, and lumbar spines; migraine headaches; depression; and anxiety. (ECF No. 23 at 3.) Reetz was also considered obese. At the hearing, Reetz testified that he lived in a house by himself and estimated that he was unable to get out of bed due to pain or migraine headaches one or two days each week. (ECF No. 16-3 at 69, 80.) Reetz owned his own construction business from 1999 until 2004, then worked for another construction company, and later opened a sandwich shop. (*Id.* at 69-72.) Reetz closed his business in November of 2013 after he became ill. (*Id.* at 72-73.)

The ALJ evaluated Reetz's claim for disability using the mandatory five-step sequential analysis. *See* 20 C.F.R. §§404.1520(a)(4) (DIB), 416.920(a)(4) (SSI). At step one, the ALJ found that Reetz had not engaged in substantially gainful activity since June 21, 2012, the alleged onset date of his disability. (ECF No. 16-3 at 17.) The ALJ found that Reetz's ownership of a sandwich shop from March 2013 to November 2013 did not generate the required income to discontinue the analysis. (*Id.*) At step two, the ALJ found that Reetz had the severe impairments of degenerative disc disease of the lumbar spine, chronic pain syndrome, right hip trochanteric bursitis, right infrapatellar saphenous nerve neuropraxia, headaches, obesity, depression, and anxiety. (*Id.*) At step three, the ALJ concluded that none of Reetz's impairments or combination of impairments met or medically equaled any of the listed impairments. (*Id* at 21.) At step four, the ALJ found that Reetz had the residual functional capacity (RFC) to perform sedentary work with non-exertional limitations based on: the objective medical evidence, Reetz's course of treatment, his daily activities, his work history, and medical expert opinion. (*Id.* at 24.) At step five, the ALJ accepted the vocational expert's testimony and concluded that there were a substantial number of jobs in the national economy that Reetz could perform, including work as an order clerk, information clerk, and eyewear assembler, and ultimately found that Reetz was not disabled. *(Id.* at 41.)

## LEGAL STANDARD

The Court's task in a social security appeal is a limited one. The Acting Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported [her] decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to [her] conclusion, but [she] need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citation omitted). That said, an ALJ is not permitted to simply ignore contradictory evidence. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

In reviewing the entire record, this Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

Reetz identifies two errors he contends necessitate remand.[1] He argues: (1) the ALJ's residual functional capacity (RFC) analysis was not supported by substantial evidence; and (2) the ALJ's analysis of Reetz's subjective symptoms was legally insufficient. Because the ALJ's analysis is supported by substantial evidence, Reetz's challenges fail, and the Acting Commissioner's decision will be affirmed.

### I.   The ALJ's RFC was Supported by Substantial Evidence.

ALJs are responsible for assessing a claimant's RFC "based on all of the relevant medical evidence and other evidence." 20 C.F.R. §404.1545(a)(3), 404.1546(c); *see Fanta v. Saul*, 848 F App'x 655, 658 (7th Cir. 2021) (emphasizing that an ALJ has the final responsibility for determining a claimant's RFC and is not required to adopt any doctor's particular opinion.) "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically

---

[1] In his principal brief, Reetz also argued that the Commissioner of Social Security holds office on a constitutionally illicit basis. (ECF No. 23 at 28-29.) He withdrew this argument in his reply brief (ECF No. 31 at 16), and the Court will not address it further.

determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

The ALJ considered the combination of Reetz's degenerative disc disease of the lumbar spine, chronic pain syndrome, right hip trochanteric bursitis, right infrapatellar saphenous nerve neuropraxia and obesity and limited Reetz to sedentary exertional work with postural limitations. (ECF No. 16-3 at 39.) The ALJ further considered Reetz's migraines, body habitus, pain, and narcotic pain medication use, and precluded him from climbing ladders, ropes, and scaffolds, unprotected heights and working around dangerous moving machinery. (*Id.*) To accommodate his pain, degenerative disc disease, obesity and knee disorder, the ALJ found that Reetz could occasionally climb stairs, balance, stoop, kneel, crouch and crawl. (*Id.*) Due to Reetz's pain and sensory complaints, the ALJ's RFC analysis precluded Reetz from operating foot controls with his lower left extremity and provided he should avoid concentrated exposure to vibration. (*Id.*) The ALJ further limited Reetz to occasional overhead reaching and with his bilateral upper extremities because of his chronic pain reports. (*Id.*) In consideration of Reetz's migraines, the ALJ provided that Reetz was able to work in an environment with no more than a moderate noise intensity and with light intensity no greater than what is found in a typical office setting. (*Id.*) The ALJ further allowed for a cane for ambulation but noted that the evidence concerning the need for a cane was inconsistent. (*Id.*) The ALJ considered Reetz's anxiety and depression and found that he could understand, remember and carry out simple or detailed instructions that carry a reasoning development level no greater than 3, make simple work-related decisions and tolerate occasional changes in work setting.

Reetz criticizes the ALJ's weighing of the medical opinion evidence in arriving at the RFC. (ECF No. 23 at 4-5.) But the record shows the ALJ properly analyzed and did not err in his treatment of the opinions of the medical providers. The ALJ gave partial weight to the opinions of state agency physicians Douglas Chang, M.D. and Seung Park, M.D. (ECF No. 16-3 at 38-39.) Drs. Chang and Park both limited Reetz to light work. (ECF No. 16-6 at 12-13, 25-27.) The ALJ credited their postural limitations as supported by the evidence but included additional and more restrictive limitations within the RFC to further accommodate Reetz's impairments, including reducing Reetz to sedentary work. The ALJ also gave partial weight to the opinion of Dr. Krawiec, a consultative examiner. (ECF No. 16-3 at 38.) Dr. Krawiec opined that Reetz could understand and carry out simple job instructions, did not display any pronounced difficulty with concentration

or attention, and would not have trouble getting along with others in the workplace. (*Id.*) The ALJ found that these assessments were supported by examination findings. But the ALJ also limited his acceptance of Dr. Krawiec's views, concluding that to the extent Dr. Krawiec opined about the severity and limiting effects of Reetz's physical symptoms, those opinions were outside his area of expertise and not credited. (*Id.*) Reetz has not shown that the ALJ's handling of these physicians' opinions was erroneous.

Reetz further complains about the ALJ's treatment of the opinions of Reetz's primary care physician, Mark Kroll, M.D. (ECF No. 23 at 27-28.) In documenting her RFC analysis, the ALJ evaluated, but chose not to adopt, Dr. Kroll's opinions. (ECF No. 16-3 at 34.) Dr. Kroll opined that Reetz was disabled due to radiculopathy and chronic pain syndrome. (*Id.*) The ALJ discounted this opinion because Dr. Kroll did not provide an assessment of Reetz's ability to engage in specific work-related activity and other deficits. (*Id.*) The ALJ noted that Dr. Kroll's opinion that Reetz was disabled due to chronic pain syndrome was inconsistent with the medical evidence, which showed that although Reetz reported significant symptoms, he displayed "some good function upon examination including no distress, normal sensory findings, intact strength, normal bulk and tone, and an intact gait." (*Id.*) Although Reetz asserts error, the ALJ's treatment of Dr. Kroll's opinions was proper. The Seventh Circuit has confirmed that an ALJ may reject a treating physician's opinion if the opinion is not well-supported and is inconsistent with the record. *See Prill v. Kijakazi,* 23 F4th 738, 751 (7th Cir. 2022) (if the treating physician's opinion is "internally inconsistent—as well as inconsistent with objective medical evidence in the record—" an ALJ can give the opinion less weight); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("[I]f the treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it."); *Hall ex rel. Hall v. Astrue*, 489 F. App'x 956, 958 (7th Cir. 2012) (affirming ALJ's decision to give greater weight to non-examining state agency physicians' opinion than that of consultative examiner, because the examiner's opinion was less consistent with the medical evidence). The ALJ's analysis here satisfies this requirement.

Reetz also criticizes the ALJ's handling of other medical opinions. The ALJ specifically discussed why she discounted the opinions of Jill Witte, APNP; Karen Aderhold, PT; Shari Asher, PT; Danqing Guo, M.D.; Christopher E. Howson, M.D.; Dr. Khabbaz; and Aaron Bubolz, D.O. (ECF No. 16-3 at 35-37.) In this discussion, the ALJ did what ALJ's are tasked with doing—she

evaluated the medical evidence and explained how the evidence supported the functional limitations she ultimately assessed and included in the RFC assessment. Accordingly, there was no error in the ALJ's handling of this opinion evidence.

Reetz also contends that there is no medical evidence restricting Reetz to sedentary work and accuses the ALJ of improperly splitting "the difference and impermissibly assess[ing] a middle-ground." (ECF No. 23 at 6.) An ALJ, however, is not "required to rely entirely on a particular physician's opinion or choose between the opinions." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Reetz's reliance on *Suide v. Astrue,* 371 F. App'x 684 (7th Cir. 2010), misses the point. Contrary to Reetz's suggestion, in *Suide*, the Seventh Circuit did not require the ALJ to rely on a medical opinion when crafting the RFC. Rather, *Suide* involved an ALJ who discredited the RFC opinions of *both* the state agency physician *and* the claimant's treating physician. *Id.* at 688. As a result, the only relevant medical opinion left to the ALJ was that of a third doctor, whom the ALJ did not discuss, and whose opinion did not include a functional assessment of the claimant's abilities. *Id.* at 690. On appeal, both parties argued about the soundness of the ALJ's decision to discount the claimant's treating physician. *Id.* at 689. The Seventh Circuit remanded the decision of the ALJ, holding that it was not the ALJ's evaluation of the claimant's treating physician that required remand, but rather "the evidentiary deficit left by the ALJ's rejection of his reports." *Id.* at 689-90. According to the *Suide* court, "[t]he rest of the record simply [did] not support the parameters included in the ALJ's residual functional capacity determination, such as an ability to 'stand or walk for six hours' in a typical work day." *Id.* at 690. The Seventh Circuit held that the ALJ's RFC determination was thus not supported by substantial evidence. *Id.* Nothing in *Suide* created a bright-line rule that rejection of physician opinion evidence automatically means the ALJ's decision is unsupported by substantial evidence. Remand is required in this setting only where the rejection of the physician's medical opinion leaves the ALJ's RFC determination untethered to any record evidence. And an ALJ is certainly prohibited from 'playing doctor' by filling in evidentiary gaps in the record with her own lay opinion. *See Herren v. Saul*, No. 20-cv-156, 2021 WL 1192394, at *5 (E.D. Wis. Mar. 30, 2021). The issue in *Suide* was that the ALJ's consideration of the remainder of the evidence was insufficient to support the ALJ's findings. Although an evidentiary deficit can occur under circumstances where an ALJ rejects each record opinion indicating functional limitations; in this case, there is no evidentiary

deficit where the ALJ partially relied on agency consultants' opinions but incorporated additional limitations.

Reetz next contends that the ALJ failed to consider or evaluate evidence that Reetz had problems with prolonged sitting. (ECF No. 23 at 7.) This misstates the ALJ's analysis, which plainly considered Reetz's sitting abilities as presented in Reetz's function report and his testimony. (ECF No. 16-3 at 25-26.) At the hearing, Reetz testified he could sit for about 20 to 30 minutes, and if he shifted his weight from side to side, he could sit for 90 minutes. (ECF No. 16-3 at 76.) The ALJ found that Reetz's claim that he had limited sitting abilities was inconsistent with the record and noted that "functional limitations set forth in the physical therapy notes were not based on objective medical findings but, rather, . . . subjective reports from [Reetz]." (ECF No. 16-3 at 36.) The ALJ gave substantiated reasons for giving more weight to the state-agency physicians' opinions, who opined Reetz could sit for about 6 hours in an 8-hour workday, than to Reetz's claims about the limiting nature of his symptoms. *See* 42 U.S.C. §423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive of disability . . . ."); 20 C.F.R. §404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled.").

Reetz's argument that the ALJ did not consider his obesity in combination with his other impairments is also without merit. (*See* ECF No. 16-3 at 31 (noting that that Reetz was obese, referencing SSR 19-2, the ruling that sets forth the approach for cases involving obesity, and considering that obesity may result in "exertional, postural and/or manipulative limitations.").) The ALJ reduced Reetz to sedentary work with postural limitations due to the combination of his impairments, including obesity. (ECF No. 16-3 at 39.)

Reetz also argues that the ALJ failed to explain how the assessed limitations regarding noise and lighting would accommodate Reetz's headaches. Reetz reported associated symptoms with headaches including photophobia (light sensitivity) and phonophobia (sensitivity to sound). (*See* ECF No. 16-29 at 2.) The ALJ found Reetz's headaches were a severe impairment and limited him to work in no more than a moderate noise environment and light intensity no greater than what is found in a typical office setting. As the ALJ discussed, Reetz "has not demonstrated cognitive or physical manifestations of [his] migraines on examination." (ECF No. 16-3 at 27.) Reetz contends a remand is warranted for further evaluation of his migraines, but Reetz has not pointed to any medical evidence to show his migraines caused any specific functional limitations beyond

those that the ALJ assessed. Accordingly, even if there were an error, remand would not be warranted. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("[E]ven if the ALJ's RFC assessment were flawed, any error was harmless" because "[i]t is unclear what kinds of work restrictions might address [claimant's] limitations . . . because he hypothesizes none," and "the medical record does not support any.").

Reetz's final argument concerning the RFC is that the ALJ did not include handling or fingering limitations. (ECF No. 23 at 10.) On this issue, the ALJ noted that Reetz testified to a significantly impaired ability to lift, grasp, and reach above his shoulders and that he had no control over his left hand. (ECF No. 16-3 at 26.) The ALJ also discussed medical records that showed Reetz had normal fine motor skills and "no sensory issues aside from decreased sensation to touch to the lateral left fifth finger. (ECF No. 16-3 at 28 (citing ECF No. 16-33 at 21).) In August 2016, an EMG nerve conduction study of the upper extremities was normal. (ECF No. 16-3 at 27.) The ALJ also noted the opinions of Karen Aderhold, PT but gave Aderhold's opinions little weight because they were inconsistent with results from Reetz's MRI scans, x-rays, and EMG test, which revealed that Reetz did not have severe abnormalities of the spine or extremities. (ECF No. 16-3 at 36.) Thus, the ALJ was aware of the evidence cited by Reetz but reached a different and reasonable conclusion that fingering or handling limitations in the RFC were not necessitated by the record.

An ALJ is required to weigh conflicting evidence from medical experts and others and fashion an RFC that reaches a logical conclusion based on substantial evidence. Here, the ALJ completed a detailed analysis of the objective medical evidence, other medical opinions of record, treatment history, history of improvement, and Reetz's daily activities. Reetz has not cited any evidence that he claims the ALJ ignored and that would have reshaped the RFC analysis. Accordingly, this Court concludes the ALJ's decision met the "substantial evidence" standard and will not be disturbed. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).

**II. The ALJ's Credibility Determination is Based on Substantial Evidence.**

When determining the existence or extent of a disability, SSR 16-3p requires ALJs to consider a claimant's "own description or statement of . . . his physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017.) This is a two-step process. First, the ALJ considers "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id.* at *3.

If there is such an impairment, then the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* Because an ALJ "is in the best position" to make this credibility determination, reviewing courts will reverse it only if "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009).

The ALJ found that Reetz's underlying impairments could be expected to produce his alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence in the record. (ECF No. 16-3 at 26.) The ALJ explained that while Reetz reported chronic, severe and debilitating pain throughout his body, Reetz regularly presented in no distress with intact strength and no muscle atrophy. (*Id.* at 27.) Diagnostic tests did not establish severe abnormalities or a clear etiology for Reetz's reports of significant and ongoing symptoms. (*Id.* at 27.) The ALJ also discussed the results of various MRIs and EMG nerve conduction studies. In February 2017, Reetz underwent a neurosurgical consultation where the physician examined Reetz and reviewed MRIs of the lumbar spine and thoracic spine and found "MRI findings are minimal and we do not have a good explanation for [Reetz's] symptoms." (*Id.* at 29 (citing ECF No. 16-23 at 8).) The physician did not offer a surgical intervention.

Reetz contends that "[i]maging revealed abnormalities in [Reetz's] cervical, thoracic, and lumbar spines." (ECF No. 23 at 15.) The ALJ, however, discussed this evidence and noted that a March 2016 MRI scan of Reetz's lumbar spine showed mild spondylosis with no canal or foraminal stenosis. (ECF No. 16-3 at 27.) Similarly, a March 2016 MRI scan of Reetz's thoracic spine showed a perineural cyst in the right foramen at C7-T1 that had not changed over time, anterior disc bulge osteophyte complexes at several levels that were unchanged, and no evidence of any significant posterior disc bulging or canal or foraminal stenosis. (*Id.*) A January 2017 MRI scan of Reetz's cervical spine revealed very mild degenerative changes, inflammatory changes in the sphenoid sinus, and no spinal stenosis or evidence of nerve root impingement. (*Id.*) The ALJ addressed the exact evidence cited by Reetz and found the medical evidence did not support Reetz's symptoms.

The ALJ reviewed Reetz's treatment plan for his back condition and chronic pain and found it to be "fairly conservative" as it included "medications such as muscle relaxers, neuromodulating medications and narcotic pain medications, injections, branch block, and

physical therapy." (*Id.* at 29.) The ALJ noted that Reetz's pain management provider declined to prescribe narcotic pain medication because "his medication use has been inconsistent with his history" and "urine drug screens have been dubious." (*Id.* at 30 (citing ECF No. 16-21 at 5).) The ALJ further noted that Reetz at times received benefit from treatment for his pain and migraines and evaluated treatment notes from September 2017, January 2018 and February 2019. (ECF No. 16-3 at 30.)

Reetz alleges the ALJ mischaracterized the record. (ECF No. 23 at 11.) But this misunderstands or mischaracterizes the ALJ's analysis. Reetz cites five records that he claims support his argument that he had reduced strength in his shoulders, biceps, triceps wrist, hands and grip strength, both hips, left knee, both lower extremities, and his cervical spine. (*Id.* at 12 citing Tr. 1906, 2394-95, 2491, 2811 and 2832.) These records in fact state that Reetz had "normal 5/5 strength in all tested muscle groups and no muscle wasting or atrophy," although there was "some limitation in bilateral [lower extremity] and left [upper extremity] muscle testing due to low back pain and left chest pain." (ECF No. 16-33 at 41 (Tr. 2811).) Other cited records show mildly reduced (4/5 or 4+/5) strength and "no muscle wasting or atrophy and weakness noted: strength is 4/5 in hip extension and knee extension left D/T pain." (ECF No. 16-23 at 8 (Tr. 1906); ECF No. 16-33 at 62 (Tr. 2832); ECF No. 16-28 at 119 (Tr. 2394-95); ECF No. 16-29 at 97 (Tr. 2491).) Nothing in the ALJ's analysis mischaracterizes the contents of these documents.

Reetz also contends that the ALJ's reliance on objective evidence was in error because Reetz has chronic pain syndrome. (ECF No. 23 at 15.) According to Reetz, the roots of his chronic pain syndrome are both physical and mental and the condition is one where the pain continues after the cause of pain is gone. (*Id.*) This complaint fails because the ALJ accepted Reetz's chronic pain syndrome as a severe impairment and acknowledged that he consistently reported chronic pain. (ECF 16-3 at 17.) The ALJ was perfectly justified in relying on objective evidence in considering the veracity of Reetz's subjective complaint. To the extent, Reetz contends an ALJ can never consider the lack of objective evidence in rejecting a claimant's subject complaints, he misstates the law. Regulations, including 20 C.F.R. §404.1529(c)(2) and (4), require an ALJ to consider the objective medical evidence. While an ALJ cannot deny disability "solely because the available objective medical evidence does not substantiate [the claimant's] statements," 20 C.F.R. §404.1529(c)(2), the ALJ here properly considered the objective evidence along with a number of other factors named in the regulations, 404.1529(c) (2)-(4), such as Reetz's course of treatment

and daily activities. Indeed, an ALJ is specifically tasked with considering whether a claimant's symptoms are consistent with the objective medical evidence. "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *See Grotts v. Kijakazi,* 27 F.4th 1273, 1278 (7th Cir. 2022); *Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) (where ALJ was "entitled to find that the plaintiff, although she may well suffer from chronic pain, is capable of full-time employment and therefore not totally disabled.") The ALJ did not commit patent error by doubting Reetz's assertions that the pain was severe enough to disable him.

In sum, the ALJ properly weighed the medical opinions, crafted an RFC supported by substantial evidence, and properly assessed Reetz's subjective complaints. Court review is deferential, and a reviewing court "will not reweigh the evidence or substitute [the court's] judgment for that of the ALJ." *L.D.R. v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019) (citation omitted). The ALJ's opinion is affirmed.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Acting Commission of the Social Security Administration is **AFFIRMED**, and the case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on January 13, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge